IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ALLISON STEWART, *Individually* § <br> *and as Representative of the* ESTATE § <br> OF TROY STEWART; STEPHANIE § <br> STEWART; NATASHA STEWART; and § <br> NICOLE STEWART § <br>  § <br> v. § <br>  § <br> CITY OF CORPUS CHRISTI, TEXAS; § <br> MIKE WERTANEN, *Individually*; and § <br> BRANDON CORDELL, *Individually* § | CIVIL ACTION NO: 2:12-cv-207 <br> JURY TRIAL |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

**NOW COME** Plaintiffs, Allison Stewart, *Individually and as Representative of the* Estate of Troy Stewart, Stephanie Stewart, Natasha Stewart and Nicole Stewart, filing this their *Plaintiffs' Response to Defendants' Motion for Summary Judgment*, respectfully showing unto this Honorable Court as follows:

**I.
CLAIMS/ISSUES PRESENTED**

On June 27, 2012, Plaintiffs filed their *Plaintiffs' Original Complaint*, wherein they brought claims, *inter alia*, that Defendants Mike Wertanen (hereinafter "Wetanen") and Brandon Cordell (hereinafter "Cordell") violated the constitutional rights of Troy Stewart (hereinafter "Mr. Stewart") pursuant to 42 U.S.C. §1983 when Defendants used excessive force upon Mr. Stewart during a medical call.

On March 1, 2013, Defendants Wertanen and Cordell forwarded to Plaintiffs their *Defendants' Mike Wertanen and Brandon Cordell's Motion for Summary Judgment* (hereinafter

occasionally referred to as "*Defendants' Motion for Summary Judgment*" or "*Motion for Summary Judgment*"). In said *Motion for Summary Judgment*, Defendants assert as follows:

1) that Plaintiffs' Fourth Amendment claim fails on the basis that Mr. Stewart was not "in custody" and/or "seized" for the purpose of Fourth Amendment protections to apply and/or that any use of force was reasonably necessary so as to protect them under a qualified immunity analysis;

2) that Plaintiffs' "failure to intervene" claim fails as there is no constitutional requirement to "rescue" Mr. Stewart;

3) that Plaintiffs' Fifth and Eighth Amendment claims fail as Mr. Stewart was neither a prisoner or subjected to any legal proceedings; and

4) that Plaintiffs' claim for assault and battery fails as Defendants Wertanen and Cordell were justified in using force in arresting Mr. Stewart.

In response, Plaintiffs would respond to such asserts (and such assertions alone) as follows:

1) Mr. Stewart was without question "in custody" or "seized" for the purpose of the Fourth Amendment;

2) Plaintiffs have properly plead and Defendants have failed to explain any inapplicability of a failure to intervene claim;

3) Plaintiffs are withdrawing any claims based on the Fifth Amendment and/or Eighth Amendment;

4) that Plaintiff was not being placed under "arrest", no force was necessary to effectuate any such alleged arrest and that even then, there are fact issues regarding the necessity and/or reasonableness of same.

## II.
## EXHIBITS IN SUPPORT

In support of this pleading, Plaintiffs have attached (and incorporate herein by reference) as Appendix I, their *Exhibit List in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment*.

## III.
## STATEMENT OF FACTS

Although Plaintiff certainly objects to the facts contained within the *Statement of the Case* asserted by Defendants as to both truth and relevance, Plaintiffs assert that the uncontested facts concerning the events of February 12, 2012, are, *inter alia*, as follows:

1)   Mr. Stewart Stewart suffered from diabetes. (Exhibit "1," Deposition of Allison Stewart, p. 27/4-7).

2)   Mr. Stewart and his daughter watched a movie and Allison Stewart went to sleep in the bedroom. (Exhibit "1," Deposition of Allison Stewart, p. 61/5-24; Exhibit "2," Deposition of Stephanie Stewart, p. 24/9-18).

3)   Mr. Stewart came into the bedroom after the movie and was fine at that time. (Exhibit "1," Deposition of Allison Stewart, p. 60/3-19; Exhibit "2," Deposition of Stephanie Stewart, p. 29/17-23).

4)   Mr. Stewart was laying in bed and he started having a seizure. (Exhibit "1," Deposition of Allison Stewart pp. 66/9-67/4).

5)   Allison Stewart was calling her husband's name but he was not responding so she went in the den and got her daughter. (Exhibit "1," Deposition of Allison Stewart, p. 67/16-2; Exhibit "2," Deposition of Stephanie Stewart, p. 32/13-33/4).

6)   Stephanie Stewart went into the room and saw that her dad was having a seizure and called EMS. (Exhibit "2," Deposition of Stephanie Stewart, pp. 32/20-33/4).

7)   Allison Stewart and Stephanie Stewart moved him to the floor and he continued to seize, trying to pull himself up. (Exhibit "1," Deposition of Allison Stewart, pp. 69/14-70/24).

8)   EMS showed up within ten minutes of the initial call. (Exhibit "2" Deposition of Stephanie Stewart, p. 26/10-12).

9) Mr. Stewart began to come out of the seizure and stopped shaking once they put him on the floor, and tried to pull himself up. (Exhibit "1," Deposition of Allison Stewart, pp. 70/23-71/1 71/2-5; Exhibit "2" Deposition of Stephanie Stewart, pp. 37/17-19; 37/18-38/10).

10) Mr. Stewart was not being combative it just seemed as though he was confused and wasn't cognitive. (Exhibit "2," Deposition of Stephanie Stewart, pp. 37/24-38/24).

11) After EMS arrived and the family explained what was happening. (Exhibit "1," Deposition of Allison Stewart, p. 77/16-20; Exhibit "2." Deposition of Stephanie Stewart, pp. 43/9-44-11).

12) EMS came into the bedroom. (Deposition of Allison Stewart, p. 76/18-19).

13) EMS decided to move Mr. Stewart to the living room, got him on his feet and assisted him to walking him to the living room. (Exhibit "1," Deposition of Allison Stewart, p. 79/16-20; Exhibit "2," Deposition of Stephanie Stewart, p. 44/12-22).

14) EMS took Mr. Stewart to the living room and sat him on the couch where he sat there slumped over, incoherent and not moving. (Exhibit "1," Deposition of Allison Stewart, p. 79/21-23; Exhibit "2," Deposition of Stephanie Stewart, p. 45/3-18).

15) The paramedic did a finger test on Mr. Stewart and determined that his blood sugar was high. (Exhibit "2," Deposition of Stephanie Stewart, p. 45/10-21).

16) There were two officers standing by the entrance of the door and the EMT's said they needed to start an I.V. and put the tourniquet on Mr. Stewart's tightly on his arm and were trying to find a vein and he started to move his arm around and moaning and one of the officers entered the room at that time. (Exhibit "1," Deposition of Allison Stewart, p. 81/6-11; Exhibit "2," Deposition of Stephanie Stewart, pp. 46/22-47/10).

17) When they put the tourniquet on Mr. Stewart, he started swatting at it like he didn't want it on and was trying to get it off. (Exhibit "3," Deposition of Brandon Cordell p. 39/3-20)

18) Mr. Stewart was still incoherent, moaning and flailing his arms around; Defendant Cordell doesn't know if he actually hit someone and/or if he actually hit anybody at all. (Exhibit "3," Deposition of Brandon Cordell p. 40/21-42/21).

19) When the EMS tried to put the I.V. in Mr. Stewart's arm, he sat there, leaning forward at the edge of the couch, staring straight ahead, not speaking and/or responding at all. (Exhibit "3," Deposition of Brandon Cordell p. 37/6-33).

20) As Mr. Stewart was trying to stand up, Defendant Cordell sat Mr. Stewart back down, and he only used the pressure that he would to stop a two-year old. (Exhibit

4

"3," Deposition of Brandon Cordell pp. 55/14-25; 90/14-19).

21) Mr. Stewart was still incoherent and not hearing anything that was being said to him. (Exhibit "1," Deposition of Allison Stewart, p. 83/3-7).

22) The other officer then entered the room and the EMT asked the family to move their cars so they left to move their vehicles. The two officers picked Mr. Stewart up and slammed him on the floor face down, handcuffed him, and one officer stood on his back and his lower torso. (Exhibit "1," Deposition of Allison Stewart, pp 83/20-99/19; Exhibit "2," Deposition of Stephanie Stewart, pp. 50/15-52-2 ).

23) Defendant Cordell never thought that Mr. Stewart was drunk, merely that he was having a blood sugar problem. (Exhibit "3," Deposition of Brandon Cordell pp. 33/20-24; 61/3-16).

24) The "hug" Defendant Wertanen used on Mr. Stewart was a restraint technique. (Exhibit "3," Deposition of Brandon Cordell p. 74/3-8).

25) Defendant Wertanen was the one to say that they needed to handcuff Mr. Stewart. Defendant Cordell grabbed his left arm and Defendant Wertanen grabbed his right arm and Defendant Brandon used his handcuffs and handcuffed him behind his body. At that time Defendant Wertanen said "let's get off him so he can breathe." They got off him and Defendant Brandon straddled his legs. Mr. Stewart was still breathing and he was still moaning but he wasn't fighting anymore. (Exhibit "3," Deposition of Brandon Cordell p. 75/7-77/3).

26) After the Defendants got the handcuffs on Mr. Stewart they left him on the floor and got off of him. Mr. Stewart's face was to the side and he threw up and he was still moaning no verbalization at all. Mr. Stewart was still laying face down with the handcuffs on. A few second later Defendant Brandon felt Mr. Stewart spasm and Defendant Wertanen said "he's not breathing." EMS told them to take the cuffs off him and they turned him over and started to work on him. (Exhibit "1," Deposition of Allison Stewart pp. 102/19-105/20; Exhibit "3," Deposition of Brandon Cordell p. 80/15-84/1).

27) Defendant Cordell noticed that Mr. Stewart had urinated on himself shortly after he had him on the ground. (Exhibit "3," Deposition of Brandon Cordell p. 88/6-10).

28) Defendant Cordell used a similar technique to a "kimura hold," to handcuff Mr. Stewart. (Exhibit "3," Deposition of Brandon Cordell p. 84/21-25).

29) Defendant Wertanen told him that he thought he heard a pop when he pulled Mr. Stewart's arm back. (Exhibit "3," Deposition of Brandon Cordell pp. 85/22-86/2).

30) At the time of the autopsy Mr. Stewart had a broken elbow. (Exhibit "4," X-ray from

      the Medical Examiner's Office).

31)    Mr. Stewart died of a sudden cardiac death due to cardiomegaly, diabetes mellitus, and **RESTRAINT PROCEDURES**. (Exhibit "5," Death Certificate).

32)    The Medical examiner did not rule that Mr. Stewart's death was of natural means and instead ruled that it was a homicide. (Exhibit "5," Death Certificate).

As to the remainder of facts alleged by Defendants and more importantly to the events surrounding the death of Mr. Stewart, suffice it to say that Plaintiffs contest such version of events and find support in so doing in the evidence thus determined.

In this case, there are clear differences as to the facts surrounding the death of Mr. Stewart. In their *Motion for Summary Judgment*, Defendants claim that Mr. Stewart had "been drinking," while the Summary Judgment evidence shows he merely had two rum and cokes while watching a movie with family. (Exhibit "2," Deposition of Stephanie Stewart p. 24/9-18). Contrary to their assertion that Mr. Stewart was "violently struggling" and/or "violently refusing," you have the deposition of Defendant Cordell himself, wherein he describes the force used to overcome Mr. Stewart's "violence," as no more that he would use to restrain a two year old. Additionally, Defendants in their Motion state in one part that Mr. Stewart bit an officer, while in another that he attempted to bite an officer. Couple this with the fact Defendants completely ignore kimura holds, broken bones and the medical examiner's determination of a homicide, what you have are at the very least, material fact issues in regards to the events surrounding this case. As such Defendants' Motion for Summary Judgment should be denied.

## IV.
## STANDARD OF REVIEW

In order for Defendants to prevail under Federal Rule of Procedure 56, they must, as movants herein, establish that there is no genuine issue of material fact and that they are entitled to judgment

6

as a matter of law. FED. R. CIV. P. 56(c). Importantly, the trial court must:

    **(1)**     **Accept all of the non-movant's evidence as true;**
    **(2)**     **Indulge all reasonable inferences in the non-movant's favor; and**
    **(3)**     **Resolve all disputes in the non-movant's favor.**

*Adickes v. S. H. Kress and Co.*, 396 U.S. 144, 158-59 (1970). The movant's burden of proof for obtaining summary judgment depends upon whether he is seeking summary judgment on a matter where he will bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant bears the burden of proof at trial, he has the burden to make "a *prima facie* showing that [he] is entitled to summary judgment," by presenting sufficient evidence to demonstrate that he would be entitled to a directed verdict at trial if the opposing party does not offer controverting evidence. *Celotex Corp. v. Catret*, 477 U.S. 317, 330-31 (1986).

    On the other hand, when a party moves for summary judgment on an issue where the non-movant will bear the burden of proof at trial, summary judgment is mandated if the non-movant fails to make sufficient showing to establish all elements essential to its case. *Id*. at 324. In these circumstances, the movant satisfies its burden of proof by either: (1) submitting "affirmative evidence that negates an essential element of the non-moving party's claim;" or (2) identifying a specific claim or element of a claim on which the opposing party, after sufficient discovery, has been unable to produce evidence sufficient to establish an essential element of his claim. *Id*. at 331. Thus, a Defendant seeking summary judgment on one of the Plaintiff's claims meets its summary judgment burden of proof when it identifies an element of that claim to which the Plaintiff will not be able to offer sufficient evidence at trial. *Id*. at 321. In the present case before the Honorable Court, Defendants have failed to sustain their burden of proof and persuasion in regard to their assertion of qualified immunity and their *Defendants' Motion for Summary Judgment* must therefore be denied.

Despite such, the issue before the Court is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. In this matter, the former of the two is unquestionably the case. Accordingly, *Defendants' Motion for Summary Judgment* should be denied.

## V.
## ARGUMENTS AND AUTHORITIES

A. *Plaintiffs Have Alleged a Proper Fourth Amendment Claim*

1. *Mr. Stewart was seized for purpose of the Fourth Amendment*

Considering the facts in this case and more importantly a "take down" and handcuffiing of Mr. Stewart, Defendants' assertion that Mr. Stewart was not "in custody" and/or "seized" for the purpose of Fourth Amendment protections to apply is simply contrary to existing law and any fact (not to mention Defendants' own pleading) in this case. For the purposes of the Fourth Amendment, a person is seized when he has been restrained by means of physical force. *California v. Hodari D.*, 499 U.S. 621, 623–26, 111 S.Ct. 1547, 1549–1550, 113 L.Ed.2d 690 (1991); *United States v. Mendenhall*, 446 U.S. 544, 553–554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In the same vein, Tex.Code Crim.Proc.Ann. art. 15.22 additionally informs us that "person is arrested when he has been actually placed under restraint or taken into custody." *Dancy v. State*, 728 S.W.2d 772, 776 (Tex.Cr.App. 1987) (quoting Art. 15.22); *Brewster v. State*, 606 S.W.2d 325, 327 n. 6 (Tex.Cr.App. 1980); *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Cr.App. 1991) ("An arrest occurs when a person's liberty of movement is restricted or restrained."). Based on such, *Defendants' Motion for Summary Judgment* should be denied on such basis.

2. *Qualified immunity*

As noted above, it is Defendants that bear the burden of pleading qualified immunity as an

affirmative defense. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) *Dennis v. Sparks*, 449 U.S. 24, 29-30, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980) . Contrary to Defendants' assertion that Plaintiffs must disprove what Defendants have failed to support with any evidence, qualified immunity is only available to an official that affirmatively asserts the defense **and** proves entitlement to same. *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Barker v. Norman*, 651 F.2d 1107, 1120 (5th Cir. 1981); *Barrett v. Thomas*, 649 F.2d 1193, 1201 (5th Cir. 1981); *Jackson v. State of Mississippi*, 644 F.2d 1142, 1145 (1981); *Williams v. Rhoden*, 629 F.2d 1099, 1103 (1980); *Douthit v. Jones*, 619 F.2d 527, 533-534 (1980). In *Defendants' Motion for Summary Judgment*, Defendants offer insufficient evidence concerning the underlying events forming the basis of Plaintiffs' complaints. On such basis alone, *Defendants' Motion for Summary Judgment* should be denied due to this failure to prove an affirmative defense. Apart from such, Plaintiffs would assert that based on the facts of this case, there exists numerous material fact issues concerning the reasonableness of Defendants' use of force which left Mr. Stewart with a broken arm and gasping for breath. Based on such, *Defendants' Motion for Summary Judgment* should be additionally denied.

B. **Defendants Confuse Plaintiffs' "Failure to Intervene Claim"**

In *Defendants' Motion for Summary Judgment*, Defendants assert that they had no duty to "failure to intervene" claim fails as there is no constitutional requirement to "rescue" Mr. Stewart. Apart from the fact that Defendants fail to explain what "rescue" they speak of, Plaintiffs would assert that the failure to intervene claim concerns not third persons, but the officers themselves.

In *Hale v. Townley*, the Fifth Circuit, citing to numerous former cases concerning the subject of failing to intervene, made very clear that when "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may

9

be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).[1] Police officers have an affirmative duty to enforce the law, and are obliged to prevent fellow officers from violating a citizen's constitutional rights. Where he fails to do, the observing officer is jointly liable to the victim. *Gagnon v. Ball,* 696 F.2d 17 (2nd Cir.1982); *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir.1983); *Archie v. Racine*, 826 F.2d 480 (7th Cir.1987); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982); cert denied 459 U.S. 1171, 103 S.Ct 816, 74 L.Ed2d 1014 (1983). Based on the fact that Defendants have not addressed such claim by explaining why such would not be applicable to the case at hand and the fact there exist facts issues on whether one or both Defendants use excessive force, Defendants' *Motions for Summary Judgment* should be denied.

C. ***Any Assertion that Mr. Stewart was being Arrested is Without Support and Contradictory***

Contrary to their earlier assertion that Mr. Stewart was not in custody for the purpose of Plaintiffs' Fourth Amendment claims, Defendants assert as to Plaintiffs' assault and battery claim that Mr. Stewart was. As Defendants have not delineated on what basis Mr. Stewart might have been arrested and even if they had, there certainly exist fact issues concerning whether he committed any criminal act, *Defendants' Motion for Summary Judgment* should be denied in such respect.

## VII.
## CONCLUSION

A Court's determination of a summary judgment motion requires deference to the non-moving party. *Willis v. Roche Biomedical Labs., Inc.*, 21 F.3d 1368, 1371 (5th Cir. 1994). If there is any evidence in the record from any source from which a reasonable inference in a plaintiff's favor may be drawn, summary judgment cannot be granted. *Id*. at 1372. In the *Willis* case, the Fifth

---

[1] Citing to *Harris v. Chanclor,* 537 F.2d 203, 205-06 (5th Cir. 1976); *Smith v. Dooley,* 591 F.Supp. 1157, 1168 (W.D.La. 1984), *aff'd,* 778 F.2d 788 (5th Cir. 1985); *see also Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 205 n. 3 (1st Cir. 1990), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991).

Circuit stated the principle that:

> [C]ourts must be vigilant in determining whether either an inference or circumstantial evidence might suffice to create the existence of a factual dispute about the claims – lest courts "use summary judgment as a 'catch penny contrivance to take unwary litigants into [their] toils and deprive [the litigants] of a trial [to which they are actually entitled].'" (citations omitted)

*Id*. at 1371.

By and through the above argument, Plaintiffs have clearly met their burden necessary to establish their claims versus the Defendants herein. In conclusion, when Plaintiffs' evidence is accepted as true and all reasonable inferences indulged, disputes resolved in Plaintiffs' favor and the laws applied to the facts of the case, there exist genuine issues of material facts concerning the claims addressed herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that this Honorable Court deny *Defendants' Motion for Summary Judgment* and for all other relief to which Plaintiffs may themselves entitled.

    Respectfully Submitted,

*Law Offices of*
GALE, WILSON & SÁNCHEZ, PLLC
115 E. Travis, Suite 1900
San Antonio, Texas 78205
Telephone: (210)222-8899
Telecopier: (210)222-9526
E-mail: cjgale@gws-law.com

By: /s/ Christopher J. Gale
    Christopher J. Gale
    Southern District Bar No. 27257
    Texas Bar Number 00793766
*Attorney-in-Charge for Plaintiffs*

**NOTICE OF ELECTRONIC FILING**

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 17th day of May, 2013.

    /s/ Christopher J. Gale
    Christopher J. Gale

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 17th day of May, 2013, the above and foregoing was sent to the following counsel of record by the means indicated below:

| | |
|---|---|
| Mark DeKoch | *Via E-File Notification* |
| Roxana I. Perez Stevens | |
| City of Corpus Legal Department | |
| P.O. Box 9277 | |
| Corpus Christi, Texas 78499-9277 | |
| | |
| John Martinez | *Via E-File Notification* |
| Hillard, Munoz & Gonzales, l.l.p. | |
| 719 S. Shoreline, Suite 500 | |
| Corpus Christi, Texas 78411 | |

    /s/ Christopher J. Gale
    Christopher J. Gale