UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALLISON STEWART, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-207 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are motions for summary judgment filed by: (1) Defendant City of Corpus Christi (City) (D.E. 25); and (2) Defendants Mike Wertanen and Brandon Cordell (Officers) (D.E. 26). This is a civil rights/excessive force case and summary judgment is sought on the basis of, among other things, qualified immunity and failure to raise a fact issue as to municipal liability. For the reasons set out below, the motions are GRANTED.

## FACTS

Details regarding the underlying facts are in dispute. However, the operative events that are material to the motions and this Order are clear. Troy Stewart (Stewart) was a diabetic and suffered from high cholesterol and hypertension, with a history of cardiac problems. D.E. 45-3, pp. 9-10. In the early morning hours of February 12, 2012, he appeared to his wife and daughter to be suffering from a significant health issue. He had what they describe as a seizure. After that, "he was disoriented and not his normal self." D.E. 34, p. 3. His daughter called 911 for emergency medical assistance.

1 / 11

Emergency Medical Technicians (EMTs) arrived, followed shortly by Corpus Christi Police Officers Mike Wertanen and Brandon Cordell.

As part of their treatment of him, the EMTs tested Stewart's blood sugar, which was "critically high"[1] and indicated that they needed to start an I.V.  Stewart, who was "incoherent, moaning and flailing his arms around,"[2] resisted the efforts to start the I.V. and, in Plaintiffs' words "was refusing medical attention."[3]  According to his daughter, Stewart "was still incoherent and not hearing anything that was being said to him."[4]  "He was not comprehending."[5]  Stewart's wife admitted that the EMTs could not have administered an I.V. with the way Stewart was moving his arms.[6]

At the EMTs' request, the Officers intervened to assist in getting Stewart's compliance with the I.V.  In the course of that effort, Plaintiffs contend that Stewart suffered another seizure and a struggle ensued.  The Officers got Stewart on the floor, face down;[7] they handcuffed him behind his back.  At that point, the struggle ended and Stewart vomited, his body went through a spasm, and he was non-responsive and stopped breathing.  The handcuffs were removed, he was rolled onto his back, and the EMTs tried to resuscitate him.

---

[1]  D.E. 34, p. 4.

[2]  D.E. 45, p. 4.

[3]  D.E. 34, p. 4.  Plaintiffs rely on Officer Cordell's testimony that Stewart sat there, leaning forward at the edge of the couch, staring straight ahead, not speaking and/or responding at all.  D.E. 45, p. 4.

[4]  D.E. 45, p. 5.

[5]  D.E. 45-2, p. 14.

[6]  D.E. 45-2, p. 16.

[7]  According to Stewart's wife, the Officers "slammed" Stewart to the floor.  D.E. 45-2, p. 14.

They rushed Stewart to the hospital, where he was pronounced dead shortly after 3:00 a.m.  The autopsy reflected a broken elbow and rib, which Plaintiffs contend was a result of the struggle and the force used to handcuff Stewart.  The Death Certificate reflects that Stewart died as a result of cardiomegaly, diabetes mellitus, and restraint procedures.  It was ruled a homicide as opposed to a death by natural causes.

## THE CLAIMS AND ISSUES

Plaintiffs, Stewart's estate, wife, and three daughters, contend that the Defendant Officers knew, should have known, or intended, that harm would come to Stewart (who was having trouble breathing already) when they put pressure on the middle of Stewart's back.  Their allegations of civil rights violations include:  (1) unreasonable seizure in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; (3) state-created danger; (4) failing to intervene to prevent the violations and/or injuries; and (5) failing to provide training and supervision as required by law. D.E. 34, p. 7.

Plaintiffs claim that, by utilizing force that was allegedly excessive, the Officers assaulted Stewart.  In this regard, they claim that the City is liable for the Officers' conduct by failing to train and supervise the officers and in acquiescing in unconstitutional behavior.  Additionally, they contend that failure to discipline the Officers amounts to the City sanctioning the behavior as a matter of departmental policy or custom of using excessive force.  The City is alleged to have acted with gross negligence or deliberate indifference.  D.E. 34, pp. 8-10.  As against the Defendant Officers only, Plaintiffs have pled state law claims of assault and battery.  D.E. 34, p. 12.

In relevant part, the Defendant Officers have pled qualified immunity and deny detaining Stewart or using excessive force.  D.E. 37.  They seek summary judgment that the claims fail because they did not engage in an actionable seizure of Stewart and because the force used was reasonable, necessary, justified, and not excessive.  They further deny the viability of a "failure to intervene" claim.  The Defendant City has pled, among other things, sovereign immunity, governmental immunity, official immunity, and qualified immunity.  D.E. 39.  The City denies the legal viability of any *respondeat superior* theory of liability for the acts of the Officers and further denies municipal liability under *Monell.*

## DISCUSSION

### A.  Qualified Immunity and § 1983 Claims Against the Officers.

When an official pleads qualified immunity as a defense, this alters the summary judgment burden of proof by shifting it to the plaintiff "who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted), *cert. denied*, 131 S.Ct. 2932 (2011).  *See also, Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

Quite recently, the Fifth Circuit has confirmed the extent of the qualified immunity defense and the plaintiffs' difficult burden as follows:

> In brief, the Supreme Court has held that given the perilous circumstances under which much law enforcement work is carried out and the inevitable need for split-second decisions, a plaintiff must overcome two levels of unreasonableness to get to the jury on a claim for a Fourth Amendment violation.

> *Saucier v. Katz*, 533 U.S. 194, 204–05,121 S.Ct. 2151, 2158
> (2001); *Anderson v. Creighton*, 483 U.S. 635, 640–44, 107
> S.Ct. 3034, 3039–41, 97 L.Ed.2d 523 (1987). The plaintiff
> must first create a genuine issue of material fact that the force
> used under the circumstances was objectively unreasonable.
> *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872,
> 104 L.Ed.2d 443 (1989). He or she must additionally show a
> genuine, material fact issue that the law was so "clear," under
> reasonably analogous circumstances confronted by the
> officer, that "no reasonable officer" would have used that
> quantum of force. *Brosseau v. Haugen*, 543 U.S. 194, 201,
> 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004) (reversing the
> Ninth Circuit and awarding qualified immunity following
> police shooting of suspect). The standard thus shields all but
> the plainly incompetent officers or those who knowingly
> violate the law. *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038.
> The standard also explicitly operates to "protect officers from
> the sometimes 'hazy border between excessive and acceptable
> force.' " *Saucier*, 533 U.S. at 206, 121 S.Ct. at 2158 (citation
> omitted).

*Ramirez v. Martinez*, No. 11–41109, 2013 WL 2096364, *8-9 (5th Cir. May 15, 2013).

Plaintiffs cannot overcome the Defendants' summary judgment motions by complaining

that Defendants have failed to support their defense with evidence or by pointing to the

disputed details in the respective accounts of the facts.

The Court interprets Plaintiffs' first argument to be that, as a matter of law, the

Officers had no business using any amount of force on Stewart or seizing him in any way

because he was simply refusing medical treatment, which was his right to do.  While a

competent adult has this right to refuse medical treatment, the same right is not afforded a

person who is unconscious or unable to make rational decisions.  *See Cruzan v. Director,*

*Missouri Dept. of Health*, 497 U.S. 261, 270-75, 110 S.Ct. 2841, 2847 (1990).  In such

cases, the law looks to surrogates for authority as to whether and how to provide medical help. *Id*.

Here, Stewart "was disoriented and not his normal self."  Officer Cordell testified:

> He [Stewart] sat there, leaning forward at the edge of the couch.  He stared straight ahead.  He had a little bit of foam coming out of his mouth, some kind of reddish pink, not a lot at that time.  Foam—His eyes—The best way for me to describe it, almost like jaundice, real yellow.  He stared straight ahead.  He never turned, made any eye contact with anybody, never responded to anybody, to the family, to anybody asking him questions.  He had no response whatsoever.  He was just sitting there.

D.E. 45-4, p. 3.

His wife and daughter, as his surrogates, had called for emergency medical assistance.  They asked for help.  In her deposition, Stewart's wife testified, "Q Did you think that there was a need for the paramedics to treat him?  A Yes.  Q And that it was imperative that it be done as quickly as possible?  A  Yes."  D.E. 45-2, p. 23.  The EMTs asked the Officers for assistance in getting Stewart under control.  D.E. 45-2, p. 25.  Under such circumstances, it cannot be said that it was objectively unreasonable for the Officers to intervene and assist in the administration of medical treatment.  Plaintiffs cannot avoid summary judgment by asserting that "no force at all" was permitted in the effort to see that medical treatment was provided in this emergency.

Plaintiffs also argue that the officers knew or should have known that it was impermissible to apply force to the middle of the back of a person who was already having trouble breathing.  However, they have failed to offer evidence to substantiate that

claim.   Plaintiffs cannot avoid summary judgment on qualified immunity by raising arguments unsupported by evidence.

Plaintiffs have failed to create a genuine issue of material fact that the force used under the circumstances or any seizure of Stewart was objectively unreasonable.  Neither have they shown that the law was so "clear," under reasonably analogous circumstances confronted by the Officers, that "no reasonable officer" would have used that quantum of force.

Plaintiffs assert claims for a "state-created danger" and "failure to intervene" in their amended complaint.  D.E. 34, 45.  With respect to a duty to intervene, the general rule is that the Due Process Clauses confer no affirmative right to governmental aid against private violence, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  The "state-created danger" exception is where the state causes or greatly increases the risk of harm to its citizens without due process of law through its own affirmative acts.  *E.g., Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).  The Fifth Circuit has not adopted the "state-created danger" exception. *McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002) (en banc). Instead, the Fifth Circuit has adopted the "special relationship" exception, which provides that the government does have a duty to act to secure life, liberty, and property interests where its restraint of an individual renders him unable to care for himself.  Examples include "incarceration, institutionalization, or other similar restraint of personal liberty."

*Cantrell, supra* at 920.  This exception does not apply because Stewart's inability to care for himself was caused by his own medical condition and not because of any incarceration.

Plaintiffs argue that what they are complaining about is the alleged duty of each Officer to protect Stewart from the unconstitutional acts of the other Officer in engaging in an unconstitutional seizure and using excessive force.  D.E. 45, pp. 9-10.  They rely on *Hale v. Townley*, which held that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983.  45 F.3d 914, 919 (5th Cir. 1995).

The question posed here is whether either Officer had a reasonable opportunity to realize the excessive nature of the force employed by the other Officer and to intervene to stop it.  *Id.*  As set out above, the claim that either Officer engaged in prohibited conduct is rejected.  Therefore, neither Officer had or breached a duty to protect Stewart from the other.  The Court, evaluating the complained-of conduct individually as to each Officer, GRANTS the Officers' motion (D.E. 26) as to both Officers.  Defendant Officers are entitled to qualified immunity from all of Plaintiffs' claims under 42 U.S.C. § 1983.[8]

**B.  Official Immunity and State Law Claims Against the Officers.**

A government employee is entitled to official immunity for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3)

_____

[8]  Additionally, the Officers characterize the scene as one of medical intervention rather than law enforcement intervention and argue that the employment of force did not constitute a "seizure" under the Fourth Amendment, citing *Peete v. Metropolitan Government*, 486 F.3d 217 (6th Cir. 2007).  The EMTs in *Peete* avoided a finding of having "seized" the plaintiffs' decedent because they were medical personnel, had no purpose other than to provide medical treatment, and the patient they were trying to treat was not conscious and could not perceive a deprivation of liberty.  Because of the Court's other holdings in this case, it need not reach this issue or determine that the *Peete* holding applies to the actions of law enforcement using handcuffs where the subject is not completely unconscious.

provided that the employee acts in good faith." *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002). A government employee must "conclusively establish" each of these elements in order to be entitled to summary judgment on the basis of official immunity. *Id. See also, Ramirez, supra* at *7-8. There is no question that a peace officer's acts with respect to the application of force and questions of search and seizure are discretionary and within the scope of his authority. *Ramirez, supra* at *8 (discussing analogous arrest powers and citing *Telthorster* for the proposition that a failure of the parties to dispute the issues allows the court to treat them as "conclusively established.")

Reading the record liberally in favor of Plaintiffs, the only disputed issue is whether the Officers acted in good faith. To establish good faith, the record must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster*, 92 S.W.3d at 465. Good faith is measured "against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). *See also, Ramirez, supra* at *8.

The test for good faith is substantially the same as the test for qualified immunity. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). *See also Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007). The main difference, however, is that official immunity does not incorporate the requirement that the right alleged to have been violated be clearly established. *Cantu v. Rocha*, 77 F.3d 795, 808–09 (5th Cir. 1996) (citing *Chambers*, 883 S.W.2d at 657). Rather, Texas's good-faith test "focuses solely on

the objective legal reasonableness of the officer's conduct." *Id.* at 809 (citing *Chambers*, 883 S.W.2d at 656–57).

The officers in this case must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed" that the decision to use force against Stewart and handcuff him was justified. *Chambers*, 883 S.W.2d at 656. As Officer Wertanen testifies in his affidavit, the Officers were attempting to get Stewart to comply with medical treatment and Stewart's resistance and attempt to bite Officer Wertanen's hands were reasons to handcuff Stewart. *E.g.*, D.E. 25-1.

To controvert the Officers' summary judgment proof on good faith, Plaintiffs must do more than show that a reasonably prudent officer could have acted differently. They must instead show that no reasonable officer could have thought the facts were such that they justified the Officers' acts. *Chambers*, 883 S.W.2d at 657. *See also, Rockwell v. Brown*, 664 F.3d 985, 993-94 (5th Cir. 2011), *cert. denied*, 132 S.Ct. 2433 (2012). Plaintiffs offered no such evidence. Therefore, the Officers are entitled to official immunity with respect to the state law claims for assault and battery and their motion (D.E. 26) is GRANTED in that regard.

## C. Municipal Liability Under § 1983 and *Monell*.

The City first seeks summary judgment on the basis that the Officers are not liable for any constitutional violation. As indicated in subsection "A," the City is correct and it is entitled to summary judgment on that basis. In addition, the City has demonstrated that the incident was not caused by any custom or policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's policymakers as

required by *Monell v. New York Department of Social Services*, 436 U.S. 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

In its motion (D.E. 25), the City set out its governing documents and included affidavit testimony that established policies and practices prohibiting the use of excessive force and requiring proper training and supervision, including discipline for improper use of excessive force.  While Plaintiffs complain of widespread and pervasive excessive force problems in the City's police force, they have not supplied this Court with evidence to substantiate those claims.  Consequently, the City is entitled to summary judgment and its motion (D.E. 25) is GRANTED.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Officers' Motion for Summary Judgment (D.E. 25) and GRANTS the City's Motion for Summary Judgment (D.E. 26).  These motions dispose of all issues in the case.  This action is, therefore, DISMISSED.

ORDERED this 3rd day of June, 2013.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE